Judge Marshall deliver.ed
the Opinion of the Court.
Judge Ewing was not present at the hearing.
Samuel Walker being indebted to Thomas Pickens, by judgment, in the sum of about one hundred and twenty pounds, besides the costs of a scire facias, which had been issued for reviving the judgment, they entered into the following agreement, viz: “Whereas Samuel Walker “ and Thomas Pickens have entered into an agreement “ as follows, that is to say, the said Walker is indebted “ to the said Pickens, the sum of one hundred and twenty “ pounds nine shillings, exclusive of the costs on the scire “ jadas-, and whereas the said Walker is about to re- “ move, and to make the said Pickens safe in his debt, “ he, the said Walker, leaves in the said Pickens’ custody, “ a negro woman and child, the woman named Hannah, “until the last of June, and the said Pickens is to use “ them humanely, and take care of them, and deliver “ them if alive, to the said Walker, or order on him, that “ is to say, his order, paying up to said Pickens one hun- “ dred and twenty pounds nine shillings, on or before the “ last of June next ensuing the date hereof. But should “ they die, or either of them, a natural deatji, the said “ Pickens is not accountable. And if the money is not “ paid by the last day of June next, the negroes are to “ be said Pickens’, for the debt; also, the costs attending “ the scire facias are to be paid at the same time, the said “ Pickens furnishing the amount thereof, &c.”
This agreement was signed and sealed by both of the parties, who were then residents of Tazewell county, Virginia. Shortly after its execution, Walker removed to Tennessee, and in the fall of 1808, Pickens followed *168 him, passing immediately by his residence, where Hannah and her child staid a night; and Pickens arriving on the next day, passed and settled at some place in Tennessee, but afterwards removed to Indiana, leaving the negroes in Tennessee; and, at a still later period, removed and settled with them, in Cumberland county, Kentucky; where, in 1821, he departed this life — directing, by his will, that his negroes should be sold.
In 1830, Walker died; and within a year or two after-wards, his heirs brought this suit against Pickens’ executors and their security, to redeem the negroes and their increase, which by this time had become of great value.
The negroes having been all sold before the commencement of the suit, the Circuit Court had an account taken of the original debt, with interest, and of the cost of raising the young negroes till the age of seven, on the one side, and of the annual hire and value of the slaves on the other, and decreed the balance, amounting to one thousand eight hundred and twenty dollars, and costs, against the defendants in their own right.
The agreement was treated by the Circuit Court, as a mortgage; and the delay in attempting to redeem, was considered as sufficiently accounted for by the removal of the parties and the ignorance of Walker, real or supposed, of the new residence of Pickens.
It is in proof, that when Pickens passed Walker’s house in Tennessee, in the fall of 1808, the latter was desirous of getting back the negroes, and offered to give some individual, present or named, as security for the price; but Pickens told him he would take the money, and nothing else; and there is no evidence that Walker then enquired of him where he was going to settle, or that he ever made any serious effort to discover his place of abode. Nor is there any thing in the cause sufficient to show that, after the last day of June, 1808, either party believed there was any right of redemption. It is a material circumstance, that the debt and costs of the scire facias exceeded the estimated value of the negro woman and her child, at the date of the agreement, or at the last of June following. No witness says they were worth more than four hundred dollars.
*169 This case, as we think, comes clearly within the principle laid down by this Court in the case of Hopkins vs. Stephenson, 1 J. J. M. 344 — that “where the mortgager “makes application to the Chancellor to redeem,he ought “not to be permitted to do so, if it can he shown, that “he received advances te the value of the thiilg mortgaged, and that by his delay an unreasonable length of “time, or by any other conduct of his, he would inflict '“injury runjustly on the mortgagee.” There was no inequality, or hardship, in the original contract; the debt was worth the negroes, and it appears to have been the real intention of the parties, and their understanding of the agreement of 1807, that the debt should be considered as paid by the negroes, if not paid in money by the day limited in that agreement. The right of redemption, if it existed after that day, has been neglected for twenty two or three years, during part of which time the negroes were within the reach of Walker, if he thought he had the right to redeem them, and really meant or desired to exercise it. There is no reason to suppose that, Pickens had any idea that they were subject to redemption after the day, or looked upon them in any other light than as his own property. Under these circumstances, it does not seem equitable to hold him, or his representatives, liable for the present value of the slaves, increased by his care and perhaps indulgence, and for their intermediate hire, as if he had made every possible advantage of their time. . To impose such a liability, or to enforce it in such a ca'se, would be unjustly to enrich one party at the expense of the other. The case is not such a one as, in our opinion, invites or deserves the aid of the Chancellor. And no relief should have been granted.
Other errors apparent in the decree itself, need not be noticed.
The decree is reversed, and the cause remanded, with directions to dismiss the bill, with costs.